419 A.2d 578

**COMMONWEALTH of Pennsylvania**

v.

**Harold KEATON, Appellant.**

Superior Court of Pennsylvania.

Argued July 23, 1979.

Filed March 28, 1980.

---

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania are sitting by designation.

Donald C. Marino, Philadelphia, for appellant.

Richard Myers, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

PER CURIAM:

On April 6, 1977 appellant was found guilty of murder in the first degree and possession of an instrument of crime by verdict of a jury. Post verdict motions, including a claim of ineffective assistance of counsel, were filed. Thereafter, new counsel for appellant was appointed by the trial court. Following the denial of the post verdict motions, appellant was sentenced to a term of life imprisonment on the murder charge and a consecutive sentence of two and one–half years to five years on the weapons offense. From these judgments of sentence, appeal was taken.

On October 14, 1976 at 4:00 p. m. the body of Calvin Yates was found in the side yard of 631 North Twelfth Street, Philadelphia. The cause of his death was established as a stab wound in the abdomen which had been inflicted by a knife. The time of his death was determined to have been at least twelve hours before the discovery of his body. Appellant had lived with Yates in the first floor front apartment at 631 North Twelfth Street. On the night of the killing, appellant had told Bernard Upchurch that he was going to kill Yates. At 10:00 p. m. on October 13, 1976 and again at 4:00 a. m. on October 14, 1976, the occupant of

---

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

the first floor rear apartment at that address heard a lot of noise and someone saying "Oh, oh, oh." On the morning of October 14, at appellant's apartment, appellant told Upchurch that he had killed Yates and also showed him the decedent's body. At trial, Upchurch positively identified appellant as a man he had known for four or five years, and testified that his nickname was "Little John," and that he was the man who had talked about murdering Yates and the one who had shown him the body. At the time of appellant's arrest, a knife was found in his right hand coat pocket. He also gave three statements to the police.

On February 11, 1977, after hearing, appellant's motion to suppress his statements and the knife was granted. Appellant's trial counsel then filed a Petition for a Writ of Habeas Corpus, which was denied on February 18, 1977. An appeal was taken therefrom; but later discontinued. On March 28, 1977, after hearing, appellant's motion to suppress the identification testimony of Upchurch was denied.

■ Appellant asserts that the evidence was insufficient to support the guilty verdict as to possession of an instrument of crime. The only evidence to support such charge was purely circumstantial. However, the jury having concluded that appellant was the slayer, and that death resulted from the infliction of a stab wound with a knife, could logically have concluded from all the evidence that appellant had possession of a knife, and that the knife was an instrument commonly used for criminal purposes within the contemplation of Section 907 of the Crimes Code (18 Pa.C.S.A. 907). Similarly, they could have further logically concluded that his possession of the knife was under circumstances not manifestly appropriate for any lawful use that the knife may have had. In *Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978), a conviction for this offense was upheld based upon only circumstantial evidence and with an absence of any direct evidence of actual physical possession of the weapon. Therefore, appellant's conviction for this offense was bottomed upon competent evidence.

■ Appellant challenges the suppression ruling concerning the identification testimony, claiming that the in—court

identification by Upchurch was fatally tainted by pre–trial out–of–court procedures. In suppressing the statements and the knife, the suppression judge found that appellant had been illegally detained immediately prior to obtaining such evidence. At the same time, Upchurch had also been taken into custody. At that time, there was a one–on–one confrontation between Upchurch and appellant. The suppression judge ruling on the identification issue found that there was a basis for the in–court identification that was completely independent of the station house confrontation, viz: acquaintanceship with the appellant for a long period of time including knowledge of his nickname. We agree with that finding. At trial, there was no mention of the out–of–court identification. In *Commonwealth v. Davis*, 264 Pa.Super. 505, 400 A.2d 199 (1979), the Court said, 264 Pa.Super. at 509, 400 A.2d at 201:

> "Subsequent to an illegal arrest or a suggestive out–of–court identification, in–court identification is admissible if, considering the totality of the circumstances, it is determined that the in–court identification had an independent origin sufficiently distinguishable from the impermissible pre–trial encounter so as to be purged of any taint of that initial illegality. . . ."

See also *Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978) and *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972).

During the voir dire of the prospective jurors, the prosecutor alluded to the decedent as a homosexual. At trial, a Commonwealth witness testified that the decedent was known as a "sissy". Appellant contends that this conduct on the part of the prosecutor was prejudicial to him because it possibly could have given rise to an inference by the jury that appellant was a homosexual, particularly since he and Yates had lived together. We conclude otherwise. In *Commonwealth v. Betrand*, 484 Pa. 511, 399 A.2d 682 (1979), the Court said, 484 Pa. at 517, 399 A.2d at page 685:

> "In order to obtain judicial relief, the language of the prosecuting officer in the opening statement must be such

that its unavoidable effect is to so prejudice the jury against the accused and prevent the finding of a true verdict. . . ."

Certainly, what occurred herein did not rise to that proportion. In *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975) far worse opening remarks by the prosecutor were held not to constitute reversible error. *Commonwealth v. Fairbanks*, 453 Pa. 90, 306 A.2d 866 (1973) on which appellant places heavy reliance, is readily distinguishable. Therein, the prosecutor, in his opening remarks to the jury referred to the accused as an "enforcer", "executioner", and of the "Black Mafia." Obviously these were held to be too extreme.

■ Appellant argues that his motion for a mistrial should have been granted by reason of the leading questions permitted to be directed by the prosecutor to one of the Commonwealth's witnesses. Apparently, a particular witness was experiencing some difficulty in understanding and answering certain questions. The trial judge exercised his discretion by permitting the prosecutor to direct leading questions to him. We see no reason to disturb his ruling on the motion for a mistrial. In *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963), the Court said, 411 Pa. at 455, 192 A.2d at 702:

". . . The extent to which a court tolerates leading questions, or suggests how questions asked by counsel should be phrased or rephrased so as to avoid error, and the extent to which the trial judge himself elicits information, are matters within the discretion of the trial judge and we will not reverse his exercise of discretion except in cases of clear abuse . . ."

See also *Commonwealth v. Holz*, 474 Pa. 349, 378 A.2d 828 (1977).

■ Next appellant asserts that it was error for the trial judge to refuse a point for charge on the principle of "mere presence." A trial judge need not include in his instructions to the jury a principle of law that bears no relationship to

the issues in the case, or that is inconsistent with either party's position.  Certainly, the Commonwealth's position was that appellant was far more than merely present at the scene of the killing.  Appellant's position was that he was not present at all at the time and place of the killing, but rather was asleep in bed at all relevant times.  Therefore, there was no reasonable basis, in fact, for inclusion of a charge on "mere presence."

■ Appellant counsel briefs and argues trial counsel rendered ineffective assistance to appellant.  In support thereof, he enumerates five bases for this contention.  First, he says that trial counsel did not submit the request for a charge on an intoxication defense.  The trial court's opinion expressly makes reference to such request having been made and granted.  Therefore, there is no merit to this point.  Secondly, appellant claims that trial counsel never communicated with him.  We fail to see how this could be true.  Trial counsel first met with appellant on the date of the preliminary hearing.  They conversed with respect to the Habeas Corpus proceeding.  They discussed the possibility and advisability of the entry of a plea of guilty.  Finally, they conferred in preparation for trial.  There is no indication that trial counsel was inadequately prepared for trial.  Thus appellant has no valid complaint in this regard.  We really do not understand the next two contentions, viz: that trial counsel did not attempt to determine the intelligence of the witness Upchurch and that he failed to challenge the credibility of the Commonwealth witnesses.  Trial counsel cross–examined Upchurch and argued appellant's position to the jury.  In doing so he obviously reflected against the reliability of Upchurch and the credibility of all of the Commonwealth's witnesses whose testimony sharply conflicted with the position asserted by the appellant.  The fifth area in which ineffective assistance of counsel is asserted is with regard to the failure of trial counsel to seek a trial continuance pending an appeal from the Habeas Corpus ruling.  In the evidentiary hearing concerning this matter, trial counsel testified that he informed appellant of the ramifications of such a continuance, including the tolling of the running of

the Rule 1100 period and the little likelihood of success of an appeal from the Habeas Corpus ruling. He further testified that appellant then agreed that they should proceed to trial, and the trial counsel believed that this course would best serve appellant's interests. We see no reason to discredit the testimony of trial counsel, nor to disturb the conclusion of the trial court that appellant was afforded effective representation at trial. See *Commonwealth ex rel Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

■ Finally, appellant asserts error on the part of the trial judge in his refusal to include a charge on involuntary manslaughter in his instructions to the jury. From a plethora of opinions out of the Supreme Court of Pennsylvania, it is abundantly clear that this is an area that is presently beclouded. At the time this case was tried, the trial judge had for guidance on this point the cases of *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973) and *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975). In both of those cases, it was held that an accused was entitled to a charge on involuntary manslaughter only when there was some evidence which could support an involuntary manslaughter verdict. Subsequent thereto, a trilogy of cases reflected an equal division in the Supreme Court of Pennsylvania between the *Jones* and *Moore* doctrine and a new interpretation based upon the language in the Criminal Homicide Sections of the Crimes Code of 1972 (18 Pa.C.S.A. 2501 et seq.) whereby an accused is entitled to an involuntary manslaughter charge, upon request, in every case regardless of what the evidence revealed. See *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977); *Commonwealth v. Garcia*, 474 Pa. 449, 377 A.2d 1199 (1977); and *Commonwealth v. Ford*, 474 Pa. 480, 378 A.2d 1215 (1977). Most recently, the same equal division in the ranks of the Supreme Court of Pennsylvania is evidenced in the case of *Commonwealth v. Warin*, 484 Pa. 555, 400 A.2d 588 (1979).

Under the Crimes Code of 1972, involuntary manslaughter is committed by one who causes the death of another person as a direct result of the doing of either an unlawful or lawful act in a reckless or grossly negligent manner. (18

Pa.C.S.A. 2504). Under no version of the evidence herein could a reasonable mind conclude that the slayer of Calvin Yates committed involuntary manslaughter. One does not "recklessly" or "negligently" thrust a knife into the body of another with such force, and to such a depth, so as to cause death. Appellant did not advance any theory whereby his conduct at the time of the slaying could have merely amounted to involuntary manslaughter. He simply denied the commission of the crime completely, and said he was asleep in bed during the period of time when the slaying could have occurred.

However, by reason of the recent appointment of Mr. Justice Flaherty to the Supreme Court of Pennsylvania, that court now is at full strength and will now be in a position to resolve the aforesaid impasse on the issue of when a charge on involuntary manslaughter is mandated. Therefore, we believe this issue alone should be transferred to the Supreme Court for resolution.

Case transferred to the Supreme Court for resolution of issue concerning the propriety of refusing to charge on involuntary manslaughter. Relief to appellant is denied in all other respects. Should appellant wish to file a petition for allowance of appeal to the Supreme Court from those portions of this opinion denying him relief, such petition should be timely filed from the date of this order.