419 A.2d 1269

COMMONWEALTH of Pennsylvania

v.

Robert LAVELLE, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed May 2, 1980.

Petition for Allowance of Appeal Denied Jan. 6, 1981.

520

Joseph Sklarosky, Assistant Public Defender, Wilkes–Barre, for appellant.

Chester B. Muroski, District Attorney, Wilkes–Barre, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

Robert Lavelle, the defendant, appeals from judgments of sentence imposed as a result of two jury trials. In one trial, the defendant was convicted of burglary, theft, and receiving stolen property and was sentenced to three to six years' imprisonment.[1] In the other trial, he was convicted of two counts of forgery and two counts of attempt to commit theft. He was sentenced three to six years' imprisonment on each forgery count and one to two years' on each attempt to commit theft count. All the above sentences imposed were to run concurrently.

■ Defendant argues that the in–court identification of him by the Commonwealth's witnesses should not have been admitted into evidence and that the Commonwealth's witnesses should have been sequestered. The defendant's unopposed motion to sequester was granted in his trial for burglary, theft, and receiving stolen property. Therefore, the defendant apparently raises this issue only as to the forgery and attempt convictions. The issue of identification was not raised in post–verdict motions after the trial for burglary, theft, and receiving stolen property.[2] Therefore, it has not been preserved for appellate review. *Commonwealth v. Blair*, 460 Pa. 31, 33 n.1, 331 A.2d 213, 214 n.1 (1975). We, therefore, affirm the judgment of sentence imposed for those convictions. Nevertheless, both these issues were raised in post–verdict motions after the trial for forgery and attempt and so have been preserved for appellate review as to those convictions. We find the arguments have merit and therefore reverse the judgment of sentence imposed for the two forgery and two attempt convictions.

1. For sentencing purposes, theft and receiving stolen property merged with burglary.

2. The only issue raised in post–verdict motions for those convictions was whether the court erred by allowing police officers to testify in their uniforms and this issue is not raised here. Moreover, in his brief here the identification argument only refers to witnesses who testified at his trial for forgery and attempt and thus does not seem to be addressed to the burglary and related convictions.

On several days in June and July in 1977, a person who identified himself as Robert Mack visited several branches of the Susquehanna Savings Association. On various occasions he opened a savings account, deposited a check payable to him in the amount of $25,000.00, and attempted to withdraw $10,000.00, $600.00, and $800.00. At trial, the five tellers to whom Robert Mack had spoken on his visits to the bank identified the defendant as Robert Mack. These same witnesses testified either on cross–examination or in the defendant's case–in–chief that they were shown photographs taken by the bank's camera of the person who purported to be Robert Mack. These photographs were shown to the witnesses either at the district attorney's office or in the courtroom on the day of trial before the witnesses testified. One witness testified that prior to testifying she was told by a policeman that she was being shown a picture of the defendant, to observe whether his present appearance was different, and to be sure she could identify him. At the time the perpetrator of the crimes had visited the bank, he had long hair and no mustache. At the time of the trial, however, the defendant had short hair and a mustache and at trial the prosecutor admitted there was a "marked difference" between the bank photographs and the defendant's appearance at trial. (N.T. 41).

The first issue we consider is whether identification of the defendant by the tellers should have been admitted into evidence.[3]

After a suggestive pre–trial identification, a witness will not be permitted to make an in–court identification unless the Commonwealth establishes by clear and convincing evidence that the in–court identification has an independent origin in the witness' observations at the time of the

3. Since the suggestive identification of the defendant occurred on the day of trial, the defendant had no opportunity to file a suppression motion within the prescribed time before trial. Thus, the failure to file a suppression motion does not result in a waiver since the "opportunity did not previously exist." Pa.R.Crim.P. 323(b); Commonwealth v. Hallowell, 477 Pa. 232, 238, 383 A.2d 909, 911–12 (1978).

crime and was not induced by events occurring between the time of the crime and the in–court identification. *Commonwealth v. Rogers*, 472 Pa. 435, 445–446, 372 A.2d 771, 776 (1977); *Commonwealth v. Davis*, 264 Pa.Super. 505, 509, 400 A.2d 199, 201 (1979). In the instant case showing certain Commonwealth witnesses pictures of the perpetrator of the crime a short time before they testified was obviously a suggestive identification. Thus, the burden was on the Commonwealth to show by clear and convincing evidence that the witnesses' in–court identification had an origin independent of the suggestive identification. *Id.*

■ To determine whether an in–court identification is independent and thus reliable, we consider:

(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out–of–court identification.

*Commonwealth v. Slaughter*, 482 Pa. 538, 546, 394 A.2d 453, 457 (1978) citing *U. S. v. Higgins*, 458 F.2d 461, 465 (3d Cir. 1972); *Commonwealth v. Cox*, 466 Pa. 582, 588–89, 353 A.2d 844, 847 (1976) (substantially same criteria).

■ A review of the record discloses that with at least one witness the Commonwealth did not establish by clear and convincing evidence an independent basis for the identification of the defendant. In this instance, the Commonwealth did not show by clear and convincing evidence that the identification of the defendant by Ms. Morucci, a teller with whom defendant allegedly deposited a forged $25,000.00 check, had an independent basis. Applying the criteria in *Slaughter, supra*, we find the following: Ms. Morucci was shown, both at the district attorney's office and in the

courtroom before she testified, three photographs all of which depicted the defendant. Such a display was done in a highly suggestive manner because each picture depicted the defendant, in some pictures the defendant was allegedly in the course of committing a crime and the pictures were shown to the witness just before she testified. Moreover, the prosecutor failed to adequately establish the circumstances surrounding the witness' opportunity to observe. There was no testimony about the lighting conditions, the length of time of the transaction, or the witness' degree of attention to the defendant's appearance. On the contrary, the witness testified that she and the defendant did not engage in any conversation and that she saw the defendant only once—the day he came to the bank. There was no testimony of whether the witness had previously described the perpetrator, whether she had previously mistakenly identified anyone else as the perpetrator, or whether she had failed to identify the defendant on a prior occasion. The time lapse between the day the witness saw the defendant at the bank and the day of the suggestive identification was nearly three months. Considering these circumstances as a whole, we find that the Commonwealth has failed to establish that the identification had an independent basis. Moreover, since Ms. Morucci was the only person who testified about the defendant's deposit of the forged $25,000 check, her identification testimony was not harmless error.

Usually when the record fails to disclose whether an independent basis exists for the in–court identification, the case is remanded for a hearing to determine whether such an independent basis exists. *U. S. v. Wade*, 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967); *U. S. v. Gilbert*, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967); *Commonwealth v. Sexton*, 485 Pa. 17, 27, 400 A.2d 1289, 1294 (1979) (Roberts, J., dissenting); *Commonwealth v. Sexton*, 246 Pa.Super. 30, 36, 369 A.2d 794, 798 (1977) *rev'd on other grounds*, 485 Pa. 17, 400 A.2d 1289 (1979); *See Commonwealth v. Spencer*, 442 Pa. 328, 332–33,

275 A.2d 299, 302 (1971). Thus, we could remand the case to determine whether Ms. Morucci's testimony about the defendant's forgery had an independent basis.

■ However, in the instant case regardless of whether an independent basis may have existed for the in–court identification, we remand for a new trial since the trial court failed to sequester the witnesses as requested by defense counsel and the in–court identification deprived the defendant of a fair trial. *Commonwealth v. Fant*, 480 Pa. 586, 593, 391 A.2d 1040, 1044 (1978) *cert. denied Pennsylvania v. Fant*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1056 (1979).

In *Fant*, the opinion of the court, written by Justice Manderino and joined in by Justice Roberts, held that in some circumstances denial of a motion to sequester witnesses who identify the defendant as the perpetrator of the crime is an abuse of discretion which violates due process even if the identification has an independent basis. *Id.* We hold that the reasoning in *Fant* applies to the instant case and therefore grant the defendant a new trial.

In *Fant*, the defendant was convicted of two counts of third–degree murder. The defendant on appeal argued that he was denied due process by the trial court's failure to sequester the witnesses. In granting the new trial the court considered that: (1) no pre–trial identification procedures were employed to identify the defendant; (2) some witnesses had previously failed to identify the defendant (the witnesses who testified at the preliminary hearing did not identify the defendant as the killer); (3) the defendant was identified under highly suggestive circumstances (the first witness at trial to identify the defendant as the killer did so only after 12 other witnesses had testified that the defendant was at the scene of the crime; did so without having previously identified the defendant, and did so for the first time in the one–on–one confrontation of the courtroom knowing the defendant to be the accused); (4) the trial

judge and prosecutor offered no good reason for denying the sequestration motion (both merely stated that many witnesses saw the defendant at the scene of the crime); (5) many of the witnesses testified to the same "facts"; and (6) the lapse of time between the incident and the trial (in *Fant* it was nine months).

Unlike *Fant*, in the instant case, the record does not disclose: (1) whether pre–trial identification procedures were employed to identify the defendant; or (2) whether any witnesses failed to identify him. Nevertheless, the record does disclose a preliminary hearing was not held and thus the witnesses could not have identified the defendant at a preliminary hearing.

Like *Fant*, however, the record discloses that at trial the tellers identified the defendant under highly suggestive circumstances. The tellers identified the defendant after they had heard police officers testify that the defendant was the perpetrator and had been arrested and with the knowledge that the defendant had been photographed in the bank and had markedly changed his appearance since the time of the crime.

Like *Fant*, moreover, the prosecutor and trial judge offered no good reason for denying the sequestration motion. At the time the motion to sequester was made, the prosecutor argued that it should be denied since each witness' testimony was wholly unrelated to the others. Although each teller–witness testified to a different transaction, these transactions were not unrelated since the perpetrator used the same name and same passbook. The trial judge gave no reason for denying the motion. He denied the motion even though defense counsel argued that his ability to cross–examine the witnesses would be impaired and that practical considerations did not make sequestration improper. *See, generally, Commonwealth v. Kravitz*, 400 Pa. 198, 218, 161 A.2d 861, 870 (1960), *cert. denied Kravitz v. Pennsylvania*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961). Thus, like

*Fant*, the reasons for the denial of the motion to sequester were insufficient.

In *Fant*, many witnesses testified to the same "facts." Here, however, each witness testified about a different transaction. Nevertheless, sequestration was important for here the tellers' testimony came after they had heard police officer witnesses testify that the defendant had been arrested and had been photographed in the bank, and some tellers' testimony came after they had heard their fellow tellers identify the defendant.

After listening to the testimony of witnesses who previously testified that the defendant was Robert Mack, the tellers could have been influenced to testify with a firmer conviction of their recollection of the defendant's physical characteristics and of his identity as the perpetrator of the crime, and could have been less likely to admit doubt about their identification than they would have admitted if they had been sequestered. Thus, although the teller–witnesses' testimony related to different transactions, their identification of the defendant may have been influenced by the testimony of witnesses who had testified before them and this possible influence could have been avoided by sequestration.

Finally, in the instant case, the lapse of time between the criminal acts and trial was about three months. Although this is less than the nine–month time lapse in *Fant*, this difference does not militate against our applying the reasoning of *Fant*. Applying *Fant*, we hold that the failure to sequester the witnesses in the instant case was an abuse of discretion which requires the grant of a new trial.

Judgment of sentence for the burglary, theft, and receiving stolen property convictions is affirmed. Judgment of sentence for the two forgery counts and two attempted theft counts is reversed and the case is remanded for a new trial on those counts.