461 A.2d 288

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**William David JAMES.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1982.

Filed June 3, 1983.

Petition for Allowance of Appeal Granted Oct. 4, 1983.

Stella L. Smetanka, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Howard K. Hilner, Pittsburgh, for appellee.

Before HESTER, BECK and VAN der VOORT, JJ.

BECK, Judge:

The Commonwealth appeals from an October 2, 1980 order granting suppression of an in-court identification of

appellee, William James, as the perpetrator in an incident for which he was charged with involuntary deviate sexual intercourse, indecent assault, terroristic threats, and simple assault. Appellee pleaded guilty to those charges but subsequently petitioned to withdraw that plea of guilty, and that petition was granted.

■ Appellee moved to suppress testimony as to a composite drawing of the perpetrator, the photo identification, preliminary hearing identification and future in-court identification. On October 1 and 2, 1980, Judge Henry R. Smith presided over a suppression hearing. The suppression court denied the motion as to the composite, the photo array and the preliminary hearing, but granted the motion as to an in-court identification of appellee by the victim.

The case proceeded to trial on October 6, 1980 and on October 10, 1980, the trial court discharged the jury after ascertaining that the jurors were deadlocked and were unable to reach a verdict. On October 29, 1980, the Commonwealth appealed from the order granting suppression of the victim's in-court identification. The lower court held that since the Commonwealth proceeded to trial, it waived the right to appeal from the suppression order.

While this appeal from a suppression order after a mistrial for manifest necessity raises an issue of first impression in this Commonwealth, we are persuaded that since retrial in this case is not barred by double jeopardy considerations and since the notice of appeal was filed within thirty days of the October 2, 1980 order as required by Pa.R.A.P. 903(a), the Commonwealth has not forfeited its right of appeal from that order.[1]

■ Where, as here, the jury is discharged because of an inability to reach a verdict, it is clear that retrial is not

---

1. We note that appellee alleges that his Pa.R.Crim.P. 1100 rights have been violated and that he accordingly should be discharged. The October 2, 1980 order from which the Commonwealth appeals also denied appellee's motion for discharge pursuant to Pa.R.Crim.P. 1100. It is clear, however, that appellee did not file a timely notice of appeal as required by Pa.R.A.P. 903(a) and (b), and that his Rule 1100 claim is not properly before us.

barred by double jeopardy. As the Pennsylvania Supreme Court recently reiterated in *Commonwealth v. Murry*, 498 Pa. 504, 507–08, 447 A.2d 612, 613–14 (1982):

It is well-settled that the grant of a mistrial must be manifestly necessary in order to avoid the bar of double jeopardy on retrial. *Arizona v. Washington*, 434 U.S. 497, 509–10, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *Commonwealth v. Santiago*, 492 Pa. 297, 301, 424 A.2d 870, 872 (1981); *Commonwealth v. Sullivan*, 484 Pa. 130, 133, 398 A.2d 978, 979 (1979); *Commonwealth· v. Bartolomucci*, 468 Pa. 338, 345, 362 A.2d 234, 238 (1976). Our cases leave no doubt however, that manifest necessity justifies discharge of a jury, when it appears that there is no reasonable probability of agreement on a verdict. *Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949); *Commonwealth v. White*, 476 Pa. 350, 382 A.2d 1205 (1978); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977); *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234; *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973). *See also, Commonwealth v. Santiago*, 492 Pa. at 303, 424 A.2d at 872; *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974); Standard 15–5.-4(c) of the American Bar Association Standards Relating to the Administration of Criminal Justice, Trial by Jury (2d ed. Approved Draft 1978).

The Commonwealth correctly notes that appellee has not challenged the propriety of the lower court's order discharging the jury, and thus the propriety of that order is not before us. We must conclude then that the discharge properly was predicated upon a finding of manifest necessity and that appellee's retrial therefore was not barred.

While we believe, and the Commonwealth acknowledges, that it would have been a better practice to have appealed from the adverse suppression ruling before appellee's first trial, we will not consider waived an appeal from that ruling after a mistrial. We note that in the context of a belated

suppression motion by a defendant, this Court has held similarly:

> Appellant has ... not waived his right to raise his suppression claim by filing his motion for the first time prior to his retrial. The issue has been presented to the court below, and it has already passed on the merits of appellant's claim. The issue is, therefore, properly preserved for our review.

*Commonwealth v. Throckmorton*, 241 Pa.Super. 62, 70, 359 A.2d 444, 448 (1976) (footnote omitted).

This Court sitting en banc in *Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983) recently clarified our standard for reviewing a Commonwealth appeal from an order suppressing evidence. The *Lapia* Court held:

> [W]e must determine for ourselves whether the order is appealable—whether it terminates or substantially handicaps the prosecution; and we must make that determination on the basis of the record, and on that basis alone.

*Id.* 311 Pa.Superior at 277, 457 A.2d at 884.

*Lapia* held that neither a good faith certification of substantial handicap by the Commonwealth, *see Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977); *Commonwealth v. Deren*, 233 Pa.Super., 373, 337 A.2d 600 (1975), nor an explanation that was outside the record but not inconsistent with that record, *see Commonwealth v. Martz*, 259 Pa.Super. 201, 393 A.2d 787 (1978); *Commonwealth v. Kunkel*, 254 Pa.Super. 5, 385 A.2d 496 (1978) (plurality opinion), was sufficient to render appealable the order of a suppression court. The *Lapia* Court therefore expressly overruled *Trefry, Deren, Martz* and *Kunkel*.

Having set out the test as enunciated in *Lapia*, we next inquire as to whether the record reflects that the order will terminate or substantially handicap the prosecution. We conclude that the fact that the victim will not be allowed to assert the final link in the identification testimony—that appellee is the man who attacked her—will severely impair the prosecution. The jurors, faced with the task of determining whether the prosecution has proved beyond a rea-

sonable doubt that appellant is guilty of the crimes with which he is charged, likely will be confused by the suppression court's ruling—that she properly identified appellee and his photograph prior to trial, but that she cannot do so at trial. In the words of the trial court, the victim could testify:

> (1) that she supplied information from which Officer Duffy prepared a composite; (2) that she selected a photograph of the defendant from a total of 16 photographs shown to her by Officer Gunthrie on May 2, 1979; (3) that she immediately identified the defendant at the preliminary hearing; and (4) that the person in court, was the same person whose photo she selected and who[m] she identified at the preliminary hearing. The later testimony is distinctly different from the assertion that the person in court was the assailant which the court's ruling would bar.

Lower court opinion at 4. While it is clear that the lower court's ruling did not deprive the prosecution of all available identification testimony, it did deprive it of a crucial final link in the victim's testimony.

■ Having held that the suppression order substantially impaired the prosecution in proving its case, we now proceed to evaluate the propriety of the suppression order. In order to so evaluate, we herein summarize the evidence as presented to the suppression court.

On March 19, 1979, Police Officer Wade responded to a radio call for an attempted rape. Upon arrival, he talked to the victim who provided a description of her attacker. That description was of a black male, approximately 6′2″ tall, stockily built, light-complected and wearing a blue jean jacket. She also described the perpetrator as having a large Afro hairstyle and moustache. The following morning the victim provided a second description to Officer Jackson. That description differed slightly from the first in that the victim added the fact that the perpetrator had long sideburns.

Detective Duffy interviewed the victim in her home and produced a composite. Three weeks later in a separate investigation, he received the picture of an individual who resembled the composite. The man in the photograph was several inches shorter than the man described by the victim, but the features were so similar that the detective decided to show the victim a photo array which included this photograph. The victim selected appellee's picture from the array of eight photos. She testified: "When I seen the photograph, I said 'This is the one,' and they asked me if I was sure and I said, 'I'm positive. I'd never forget his face.'" Notes of Testimony at Suppression Hearing ("N.T. S.H.") at 207. She subsequently was shown a second array of eight photos none of which was of appellee. She did not select any of those as being of the perpetrator. She also identified appellee at the preliminary and suppression hearings as being the perpetrator.

The suppression court explained its rationale for suppressing the in-court identification of appellee as the perpetrator:

> [T]he victim's identification of the defendant did not become crystallized in her mind on the night of the incident, but only after observing the defendant at the preliminary hearing and during two full days of the suppression hearing. ... Any in-court identification would obviously be so tainted as a result of these subsequent confrontations that an in-court identification should not be allowed. Further, the suppression court, as a result of the foregoing was not convinced that the Commonwealth had clearly established the independent origin of the in-court identification.[2]

Lower court opinion at 5. (Citation omitted.)

The suppression court specifically found the pre-trial identification procedures not to have been invalid and refused to

2. As we detail *infra*, we find to the contrary that the Commonwealth did clearly establish the independent origin of the in-court identification. Moreover, the lower court explicitly found such an independent origin in sustaining the victim's identification at the preliminary

suppress evidence as to those procedures.[3] Since the court ruled that there was no primary illegality, we need not evaluate whether the in-court identification resulted from "exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Commonwealth v. Slaughter*, 482 Pa. 538, 546, 394 A.2d 453, 456 (1978) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)).

Assuming arguendo, however, that the pre-trial identification procedures were so unduly suggestive as to be inadmissible at trial, we would find an independent basis for an in-court identification in the instant appeal.[4] The relevant criteria for determining whether the in-court identification is independent of the suggestive confrontation(s) have been stated many times:

(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe

hearing. *See* N.T.S.H. at 246–247. There is little doubt, of course, that the preliminary hearing confrontation was suggestive as appellee was the only individual in handcuffs.

**3.** There is no evidence of record supporting a finding that the initial photographic identification in this case "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth v. Martin*, 481 Pa. 515, 520, 393 A.2d 23, 25 (1978) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). As the *Martin* Court stated: "Since the pretrial photographic identification has been determined not to be constitutionally infirm, Martin's third contention that the in-court identification of himself by [the victim] was impermissibly tainted by the prior pretrial identification must fail." *Id.*, 481 Pa. at 520, 393 A.2d at 26; *see, e.g., Commonwealth v. Zabala*, 303 Pa.Super. 72, 449 A.2d 583 (1982).

**4.** As this Court stated in *Commonwealth v. Lavelle*, 277 Pa.Super. 518, 522–523, 419 A.2d 1269, 1271–72 (1980):

After a suggestive pre-trial identification, a witness will not be permitted to make an in-court identification unless the Commonwealth establishes by clear and convincing evidence that the in-court identification has an independent origin in the witness' observations at the time of the crime and was not induced by events occurring between the time of the crime and the in-court identification. *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771, 776 (1977); *Commonwealth v. Davis*, 264 Pa.Super. 505, 400 A.2d 199, 201 (1979).

the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification.

*Commonwealth v. Lavelle,* 277 Pa.Super. 518, 523, 419 A.2d 1269, 1272 (1980) (collecting cases).

Applying this test it becomes clear that even assuming the suggestiveness of the pre-trial confrontations, the victim's independent opportunity to observe her assailant was proved by clear and convincing evidence. Specifically, the victim testified that she viewed her assailant's face at extremely close range while he restrained her for a period of five to ten minutes. There was a street light nearby. Her assailant's face was not covered. We also note the consistency in the victim's descriptions of her assailant. As noted above, the only variation in her descriptions to police was the addition of the fact that he had long sideburns. In her initial description, she failed to mention that observation. We note that the victim's estimation of the perpetrator's height was several inches taller than his actual height. We will not accord that discrepancy much weight in light of the unerring accuracy of the rest of the description she provided. In addition, the victim testified: "I'm not that good on heights. I'm only 5'4", and to me, he seemed very tall." N.T.S.H. at 199. The victim never identified any other individual as the perpetrator and picked him unequivocally as the perpetrator when shown his photo in an array which the lower court found to be properly administered. She did not hesitate in so choosing. The photographs shown to the victim were of men of similar age, hair style, facial hair and complexion. While six weeks elapsed between her observation at the time of the incident and her selection of appellant's photo from the array, she was

unequivocal in the identification. We conclude that the Commonwealth established by clear and convincing evidence that there was an independent basis for an in-court identification by the victim.

Order of the lower court suppressing the victim's in-court identification of appellant is reversed, and this case is remanded for trial.