387 A.2d 1273

COMMONWEALTH of Pennsylvania

v.

**Harry TWIGGS, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 12, 1978.

Decided June 2, 1978.

Reargument Denied July 10, 1978.

Lawrence J. Roberts, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Legrome Davis, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Harry Twiggs, was convicted by a jury of murder of the first degree. Post-verdict motions were denied and appellant was sentenced to life imprisonment. A direct appeal was filed to this court. As one assignment of error, appellant alleged that his trial counsel was ineffective. That assignment of error could not be decided on the record available at that time and this court vacated the judgment of sentence and remanded the matter to the Court of Common Pleas in Philadelphia for an evidentiary hearing. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). Following the evidentiary hearing, the court determined that trial counsel was effective and reimposed the above judgment of sentence. This appeal followed.

■ Appellant first alleges that the evidence was insufficient to sustain the conviction for murder of the first degree. We do not agree.

The facts are as follows. On December 24, 1971, Gerald Bethea, the Commonwealth's sole eyewitness, was alone at the Philadelphia apartment of Thomas Cirwithian, the decedent. Appellant and a companion entered the apartment, and stated that they wished to buy some heroin. As Bethea turned around, the pair drew pistols and took certain personal belongings. When Cirwithian arrived at his apartment, Bethea told him of the robbery. Cirwithian got a pistol from a friend and, along with Bethea, went looking for appellant. The search, however, was unsuccessful.

On January 1, 1972, Cirwithian and Bethea were driving through West Philadelphia when they saw appellant board a bus. They followed the bus until appellant left the bus. Cirwithian, armed with a .22 caliber pistol, confronted appellant and a fight broke out. Appellant disarmed Cirwithian, who then ran toward his car and got in. Appellant fired at Cirwithian, ran toward him as he sat in his car and from point blank range shot the victim in the head. Cirwithian died as a result of this wound.

At the time of appellant's arrest he was in possession of a .22 caliber pistol and a .25 caliber semi-automatic pistol. A firearms examiner testified that the bullet removed from the victim's head was a .25 caliber bullet. The examiner further testified that the bullet in question could not have been fired from the victim's .22 caliber weapon. Because of insufficient markings, however, the firearms examiner was unable to positively identify the .25 caliber pistol as the murder weapon.

Appellant's version of the incident is different. Appellant stated that he was unarmed at the time he was accosted by Cirwithian. While disarming Cirwithian, a shot was accidentally fired. After appellant disarmed Cirwithian, he began chasing the victim across the street when he accidentally fired the gun a second time. Appellant maintained one of these two shots killed Cirwithian.

In *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975), we articulated our test of sufficiency of the evidence:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence." (Citations omitted.)

At the time of this offense, the legislature had provided:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree. All other kinds of murder shall be murder in the second degree. . . ." Act of June 24, 1939, P.L. 872, § 701, formerly 18 P.S. § 4701.[1]

In *Commonwealth v. Tyrrell,* 405 Pa. 210, 212–13, 174 A.2d 852, 853 (1961), we stated: "The essential difference in a nonfelony murder-killing between murder in the first degree and murder in the second degree is that murder in the first degree requires a specific intent to take the life of another human being." We further stated in *Commonwealth v. Carroll,* 412 Pa. 525, 532, 194 A.2d 911 (1963):

"The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all rea-

---

1. The killing in this case took place before the effective date of the New Crimes Code (June 6, 1973), and this case is thus governed by the Penal Code of 1939.

sonable inferences therefrom, and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being."

Appellant fired at the victim and after missing, chased the victim to the car and fired the fatal shot. In this case, the jury chose to believe the Commonwealth's witness' version of the shooting. Under these circumstances, the evidence was sufficient to sustain appellant's conviction of murder of the first degree.

■ Appellant next claims that his trial counsel was ineffective for failing to call a certain defense witness. This issue required our remand for an evidentiary hearing. The facts are as follows.

The only eyewitness to the shooting was Gerald Bethea. At appellant's first trial,[2] defense counsel attempted to impeach Bethea's credibility by introducing the testimony of Irving Gilmore. Gilmore testified that on the day of the shooting, he met Bethea and Cirwithian in a drug store and that the pair told him that they intended to kill Twiggs. Bethea never mentioned this meeting or the discussion in his trial testimony.

In two of appellant's three trials, the case was presented to the jury for deliberation. In his first trial, in which Gilmore testified, a hung jury was declared and a mistrial granted. In the third trial, in which Gilmore did not testify nor was his prior testimony offered into evidence, the jury returned a verdict of murder of the first degree. Appellant contends that the difference in the results was Gilmore's testimony, as the remainder of the testimony in both trials was substantially the same.

Appellant now argues that his trial counsel was ineffective for failing to either secure Gilmore's presence at the third trial or have the notes of his previous testimony read to the jury. We do not agree.

**2.** Appellant's first trial ended in a hung jury and a mistrial was declared. A mistrial was also declared at appellant's second trial, when he was shot attempting to escape from the courtroom. At the third trial, appellant was convicted and it is from that judgment of sentence that he now appeals.

In *Com. ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352 (1967), we stated:

". . . counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* [emphasis in original] *designed to effectuate his client's interests.* The test is *not* [emphasis in original] whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis." (Emphasis supplied.)

In appellant's first appeal, we stated:

"If counsel's decision not to secure Gilmore's appearance or to have the notes of Gilmore's previous testimony read to the jury was based on a reassessment of its worth and a conclusion that it was of little or no value in the posture of this case, then that decision clearly had some reasonable basis designed to effectuate Twiggs's interests. In such circumstances, counsel's conduct would not constitute ineffectiveness. [Citation omitted.] Had counsel reached this decision on a basis designed to advance his client's interest, this case would be analogous to those situations in which, as a matter of trial strategy, counsel decides not to call a witness at all. . . . [Citations omitted.]

"If, however, counsel's failure to seek compulsory process to obtain Gilmore's testimony or to have his prior testimony read to the jury was the result of sloth or lack of awareness of the available alternatives, then his assistance was ineffective. In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel." *Commonwealth v. Twiggs, supra,* 460 Pa. at 110–11, 331 A.2d at 443.

At the evidentiary hearing, appellant's trial counsel testified that he was apprehensive about calling Gilmore; however, at appellant's insistence, counsel attempted to reach the witness but was unsuccessful. Counsel explained his apprehensiveness by testifying that Gilmore's testimony had added little to appellant's case, especially since the Commonwealth had a witness who would allegedly destroy Gilmore's credibility.[3] As counsel testified, he:

". . . tried to talk [appellant] out of pursuing calling Mr. Gilmore, it having been my experience that there is nothing worse than the jury to decide that a witness is not telling the truth. . . . And if the jury decided that Gilmore was a liar and could be proved to be a liar, Harry could end up getting convicted even if all the [other] evidence . . . would have indicated that he was innocent. From my opinion juries just don't like defense witnesses of some sort of alibi nature that lie."

Despite this, counsel made diligent efforts to locate Gilmore, but was unable to do so. Under these circumstances, we cannot find ineffectiveness on the part of trial counsel for failing to call Gilmore.

When asked about introducing the notes of Gilmore's prior testimony, counsel testified that this was not done because the Commonwealth could have called the drugstore owner to rebut Gilmore's prior recorded testimony. As counsel stated: ". . . we would not have had a live body there to refute and give the jury an opportunity to judge face to face who was telling the truth, was [the drugstore] open or closed." As a reasonable explanation existed for not introducing Gilmore's prior recorded testimony, and that explanation had "a reasonable basis designed to effectuate his client's interests," counsel was not ineffective. See *Maroney, supra.*

3. When Gilmore was called at appellant's first trial, the Commonwealth had inadequate time to rebut his testimony. By the third trial, however, the Commonwealth had interviewed the owner of the pharmacy where Gilmore allegedly met Bethea and Cirwithian. The owner was prepared to testify that on the day of the alleged meeting in the pharmacy, the store was not even open.

■ Appellant finally complains that he has been denied the right of a meaningful appeal. According to appellant, counsel attempted to withdraw from the case following the aborted second trial where appellant was shot trying to escape. A hearing was held and the request to withdraw was denied. Appellant believes that the lack of a transcript from this hearing had deprived him of a meaningful appeal. We do not agree.

In *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A.2d 478 (1973), we granted the defendant a new trial because no transcript of the trial existed where defendant claimed that the lack thereof denied him a meaningful appeal. We do not believe *Goldsmith* is controlling, as it is distinguishable on its facts. It is clear that a trial transcript or equivalent picture is necessary for a meaningful appeal, as an appeal necessarily involves trial errors which would entitle a defendant to a new trial.

In this case, appellant has failed to show how the "missing" transcript in any way has denied him of a meaningful appeal. Appellant hints in his brief that the requested withdrawal shows that counsel did not provide effective representation. In this case, upon each specific allegation of ineffective assistance of trial counsel, we have upheld counsel's effectiveness. As appellant has made no other allegations of prejudice or denial of a meaningful appeal, we find this claim to be meritless.

Judgment of sentence affirmed.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent, for in my view appellant is correct that counsel's failure to call Irving Gilmore to the stand at appellant's third trial constituted ineffective assistance of counsel.

The reason proffered by trial counsel for not calling Gilmore was that the Commonwealth had a witness "who would allegedly destroy Gilmore's credibility." The witness,

not called by the prosecution at appellant's first or second trial, was the owner of the pharmacy in which, according to Gilmore, he met Gerald Bethea and Bethea, the only eyewitness to the shooting, told Gilmore he intended to kill appellant. The owner would allegedly testify, as trial counsel assumed and the majority is now willing to assume, that on the day of this alleged meeting the drugstore was not even open.

Appellant claims, however, and the trial record supports the claim, that trial counsel did not conduct an independent investigation into the prosecution's claim that it had such a witness who was prepared to so testify. To the contrary, trial counsel relied on representations made by the prosecutor that there did exist, in fact, such a rebuttal witness. In light of the fact Bethea was the only eyewitness to the shooting, and because Gilmore's testimony could cast doubt on Bethea's credibility, counsel should have undertaken an independent investigation to ensue that Gilmore's credibility could, in fact, be "destroyed." Indeed, in this very case this Court stated that counsel should have done as much, and his failure to do so would be ineffective assistance of counsel:

> "In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel. *Commonwealth v. Twiggs, supra,* 460 Pa. at 110–11, 331 A.2d at 443."

Maj. opinion at 1276.

If counsel had himself investigated the existence of a rebuttal witness, and *then* determined that it would be unwise to call Gilmore at the third trial, I might agree that there was a reasonable basis for not calling Gilmore. That was not the case here, however, and counsel should not have taken the prosecution's word that it had a witness who could destroy Gilmore's credibility. Similarly, I object to the majority's willingness to accept the prosecution's position as

to what the pharmacy owner would testify to (ante n. 3): an appellate court cannot and may not assume the truth of any factual matter not considered at the trial level.