409 A.2d 894

**COMMONWEALTH of Pennsylvania**

v.

**William SHEPHERD, Appellant.**

Superior Court of Pennsylvania.

Argued July 16, 1979.

Filed Sept. 7, 1979.

Petition for Allowance of Appeal Denied Feb. 4, 1980.

Lawrence S. Rosenwald, Philadelphia, for appellant.

Joseph Casey, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

O'BRIEN, Justice:

Appellant, William Shepherd, was convicted by a jury of murder of the first degree and possession of instruments of crime. Post-verdict motions were denied and appellant was sentenced to a term of life imprisonment on the murder

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

charge and a prison term of one to five years on the count charging possession of instruments of crime. This appeal followed.

■ Appellant first argues that the testimony of a Commonwealth witness gave rise to an impermissible reference to prior criminality, and that his subsequent motion for mistrial was improperly denied. The applicable standard is, by now, well settled: mistrial is warranted when a juror "could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972); *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (1978).

■ The testimonial reference complained of occurred during the direct examination of the police ballistics expert. When asked to describe the manner in which ballistics tests were conducted the witness testified, in part:

"As the firearm would be submitted to our lab it would first be examined—it would be checked for any presence of foreign material. It would be checked to see that the barrel is clear of any obstructions. All of these would be noted. The findings would be noted.

"The firearm would then be fully loaded with the ammunition designed for that firearm. It would be taken into a room within our laboratory designated just for test firing of arms. It would then be discharged into a cotton recovery system that we utilize. That test fired projectile would be recovered from the cotton and then examined and compared against the evidence specimen and whatever outstanding cases that our laboratory may have. By outstanding cases, I refer to shootings where no firearm has been recovered."

In an attempt to clarify any uncertainty as to any inferences as may have arisen from the above, the prosecutor inquired further:

"Q. You also indicated that this gun was checked against all outstanding cases. Is that the procedure followed with regard to every gun submitted to your laboratory?

"A. That is correct.

"Q. And every gun that is submitted is checked against all outstanding cases in that—in the department?

"A. It's checked against the outstanding cases and I know that although the test is still going under sc. 1tiny for other cases I know that for the past year the .32 caliber cases had been cleared. Beyond that I cannot say positively."

Additionally, the trial court timely instructed the jury to disregard all references to the fact that the results of ballistics tests were compared with other "open" cases. We are not persuaded that the above testimonial references permitted the jury reasonably to infer prior criminal activity on the part of appellant. See also, *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (1978).

■ Appellant contends his confession was involuntarily made and argues the court below erred in denying his motion to suppress it. We need not consider the issue, however, since the confession sought to be suppressed was not introduced into evidence. Such error as the denial of the suppression motion may have been was, in the event, harmless. *Commonwealth v. McDonald*, 459 Pa. 17, 326 A.2d 324 (1974).

Appellant further asserts that the court below erred in refusing to suppress the murder weapon, on two theories. First, appellant argues the weapon was fruit of the poisonous tree, i. e., the involuntary confession. Yet the record of the suppression hearing indicates that police first interrogated Richard McGee, who had secreted the weapon in his home at appellant's request, two hours prior to the interrogation of appellant which resulted in the confession. Moreover, the confession itself did not direct police to McGee, but rather stated that appellant "broke down" the weapon by striking it against the sidewalk, and threw the pieces into a sewer.

Second, appellant urges that the weapon should have been suppressed as the fruit of an impermissible confrontation between McGee and appellant. Police began interrogating McGee concerning the location of the murder weapon at

approximately 11:00 p. m. on October 27, 1976. The interrogation of appellant and his mother began at approximately 1:00 a. m. October 28, 1976. Appellant confessed to the crime, although indicating he threw the weapon down a sewer. McGee, however, contemporaneously denied any knowledge of the pistol or its location. Subsequently, McGee requested permission to see appellant, which request was granted. McGee met with appellant who told him to give the weapon to the police.

Not all police questions or conduct which result in a statement from an accused are interrogation. *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). Where there is no expectation of an admission and the police conduct is not an attempt to obtain an admission, there is no interrogation. *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978); *Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975). Instantly, the confrontation between appellant and McGee occurred after appellant had made what purported to be a full and detailed confession. Moreover, the confrontation was staged not at the initiative of the police, but rather at the request of McGee. We conclude that, on these facts, there was no attempt on the part of the police to obtain, nor was there an expectation of receiving, an admission. Thus the confrontation complained of was not "interrogation." Appellant's contention that the weapon was the fruit of an impermissible confrontation staged by the police is, hence, without merit.

Appellant next argues his confession and the murder weapon should have been suppressed as the product of an arrest without probable cause. The instant crime occurred outside the 1901 Bar, 19th and Christian Streets in Philadelphia. Following the fatal shooting, police interviewed, among others, the bartender, barmaid and a patron of the tavern, all of whom had seen appellant in the bar, pistol in hand, shortly before the crime. The bartender told police he knew appellant and had known appellant's mother, whom he knew only as "Tank", for three or four years. Armed with this information, the police searched their records and learned of "Tank's" full name, appellant's name, and obtain-

ed appellant's photograph. An array of eight Polaroid snapshots was assembled and a detective dispatched to the 1901 Bar where he showed the array to the bartender and barmaid individually. Both identified appellant as the person who had been in the bar shortly before the shooting. Contemporaneously with the photographic identification, appellant, accompanied by his mother, surrendered to police. Appellant's mother told police her son was wanted for investigation of a shooting. We conclude from the above that the arrest of appellant was based upon probable cause.

█ Appellant next argues the trial court erred in unduly restricting the scope of his cross-examination of a Commonwealth witness, Detective Martin Buck. Detective Buck testified in the Commonwealth's case-in-chief that he had recovered the murder weapon from the home of a witness, Richard McGee. On cross-examination, defense counsel sought to ask whether McGee had been warned of his "Constitutional right against self-incrimination?" An objection to the question by the Commonwealth was sustained, and appellant assigns this ruling as error.

Appellant apparently contends he was prevented from showing or attempting to show bias or motive for testifying on the part of Richard McGee. Clearly appellant had a right to attempt to impeach the credibility of McGee by such a showing. But McGee, who testified prior to Detective Buck, was not cross-examined concerning his motive for testifying. Where appellant had available to him an opportunity to impeach a Commonwealth witness, which opportunity was foregone, he may not be heard to complain that he was prevented from asking another witness a question which may well have been irrelevant. *Commonwealth v. Brown*, 470 Pa. 274, 368 A.2d 626 (1976). For as the court below noted, *Miranda* warnings are often administered to persons not suspects in the crime under investigation.

Appellant next assigns as error the trial court's admitting into evidence an out-of-court statement which he characterizes as hearsay not within any exception. When appellant left the 1901 Bar after having terrorized its patrons with a pistol, the barmaid telephoned police and reported the inci-

dent. After waiting on several customers, the barmaid saw "someone" enter the tavern and utter the statement of which appellant now complains. At trial, the Commonwealth was permitted, over objection, to elicit the following response:

"A. Oh, somebody came in the bar and said something about the fellows had come out had shot somebody up the street."

Appellant contends this testimony is inadmissible under the excited utterance exception to the hearsay rule because the Commonwealth failed to establish that the declarant actually observed the event which stimulated the utterance. No such requirement obtains, however. As Professor McCormick has explained:

"In a modified manner the requirement that a witness have had an opportunity to observe that to which he testifies is applied. Direct proof is not necessary; if the circumstances appear consistent with opportunity by the declarant, this is sufficient. If there is doubt the question is for the jury." McCormick, Evidence § 297 at 707 (2d ed. 1972); *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978).

■ The circumstances surrounding the out-of-court declaration complained of indicate that the recipient of the statement, and in-court witness thereto, was the barmaid in the 1901 Bar. She observed appellant and an associate enter the crowded tavern and threaten several patrons with a pistol. Appellant thereafter left the bar and was followed by the victim. The witness telephoned police, waited on several customers, and then observed "someone" enter and utter the statement here at issue. The shooting occurred directly outside the bar within minutes after the victim had followed appellant to the street. The Commonwealth argues this presents a circumstantial case consistent with opportunity by the declarant to observe the event to which he responded by uttering the statement.

It is true that the instant case presents a close question concerning the burden which adheres to the proponent of

the out-of-court statement. We consider that the trial court properly left this close question for the jury to resolve.[1]

Appellant next assigns as error three separate instances of improper argument by the prosecutor. Our reading of the closing argument of the prosecutor convinces us that she nowhere exceeded the bounds of permissible argument and that appellant's assertions to the contrary are without merit. *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972).

■ Finally, appellant challenges the sufficiency of the evidence to support a verdict of more than voluntary manslaughter. Although there is evidence of record which would support a conclusion that appellant was angry when he shot the victim, applying, as we must, the well-settled test for evaluating the sufficiency of the evidence, we conclude appellant's contention is without merit. See *Commonwealth v. Twiggs*, 479 Pa. 162, 387 A.2d 1273 (1978).

Judgment of sentence affirmed.

1. That defense counsel did not argue this point to the jury does not militate against the propriety of the ruling of the court below. Defense counsel was understandably more concerned with arguing against the effect of the testimony of two eyewitnesses to the shooting.