449 A.2d 583

**COMMONWEALTH of Pennsylvania**

v.

**Alphonzo F. ZABALA, Appellant.**

Superior Court of Pennsylvania.

Argued March 2, 1981.

Filed Aug. 6, 1982.

Petition for Allowance of Appeal
Denied Dec. 1, 1982.

Abraham A. Hobson, III, Norristown, for appellant.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and WICKERSHAM and BROSKY, JJ.

BROSKY, Judge:

Appellant was convicted of forgery and theft by deception in connection with purchases he made using Travelers Express Company money orders at various commercial establishments in Lansdale, Montgomery County, on May 12, 1979. His motions for New Trial and in Arrest of Judgment were denied, and sentence was imposed. We affirm.

Appellant raises the following issues on appeal: (1) whether he was denied a fair trial because comments by the Assistant District Attorney and various prosecution witnesses during trial implied that appellant had engaged in prior criminal activity; (2) whether the in-court identifications by the prosecution witnesses should have been suppressed (3) whether the forgery statute (Title 18, Pa.C.S. § 4101) can be violated by signing of a fictitious name, and, if so, whether the Commonwealth failed to sustain its burden of proving that the name signed, "Richard Swan," was indeed fictitious; and (4) whether the trial court erred in its instruction to the jury on the elements of theft by deception.

On November 30, 1977, the Gayman Check Cashing Agency, 300 East Tioga Street, Philadelphia, was broken into through a wall which separated it from an adjoining apartment. Seven hundred ninety-seven Traveler's Express money orders were stolen, and the Traveler's Express Company was so notified. We are here concerned with six of these money orders. They were passed on May 12, 1979, at six different stores in Lansdale, Montgomery County. The purchaser identified himself as "Richard Swan" and signed the money orders as such, receiving merchandise and change in return for each. All of the stores attempted to deposit the money orders in their accounts, only to have them returned, payment refused because they were stolen. Store personnel involved in each transaction identified the appellant at trial as the man who had posed as "Richard Swan." Experts testified to the presence of appellant's fingerprints on two of the money orders and to a "high probability" that the signatures were written by the appellant.

Appellant claims to have been prejudiced by comments of the Assistant District Attorney and various prosecution witnesses, which allegedly implied that he had been involved in prior criminal activity. The opening and closing remarks of the Assistant District Attorney are not reflected in the record, so we are unable to evaluate the propriety of the trial judge's denial of defense attorney's motion for mistrial. The appeal briefs for both parties indicate that the

comments of the prosecutor to which the defense attorney objected were references to the burglary of the Gayman Check Cashing Agency. Evidence of the burglary was necessary to show that the subject money orders did not enter the stream of commerce in a lawful fashion. Furthermore, the trial judge reminded the jury that statements of counsel are not evidence and that the defendant was not charged with stealing the money orders. In view of the foregoing, we find no prejudice to the appellant arising from the comments of the Assistant District Attorney.

▪ The direct examination of Officer Morrison by the Assistant District Attorney, as to whether the officer knew the defendant, was also objected to in a defense motion for mistrial on grounds of prejudice. Rule 1118(b) provides for mistrial, on motion, "[w]hen an event prejudicial to the defendant occurs during trial...." Pa.R.Crim.P. 1118(b). The standard for declaring a mistrial was set out in *Commonwealth v. Shepherd*, 269 Pa.Super. 291, 409 A.2d 894 (1979): "... mistrial is warranted when a juror 'could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.'" Id., 269 Pa.Superior Ct. at 294, 409 A.2d at 895. The facts presented by Officer Morrison's testimony included the assertion that he was the officer who fingerprinted the defendant following his arrest. Therefore, it would be equally as consistent for the jury to infer that the officer knew the defendant because he fingerprinted him as for it to infer that the defendant had previously been involved in criminal activity. Since fingerprinting is commonly known to be routine procedure following an arrest, the officer's testimony could not have been surprising to the jury, nor prejudicial to the defendant. There being no prejudice, the motion for mistrial was properly denied.

▪ Appellant also argues that the trial court erred in denying its motion for mistrial, made in response to the testimony of Detective McCarthy. McCarthy's testimony was similar to that of Morrison; on direct examination, he answered that he knew the defendant and knew where the

defendant lived.[1] The defense objected. Detective McCarthy was the officer who arrested the defendant. The reasonable inference to be drawn from the facts presented by McCarthy was that the detective knew the defendant and knew his address because he arrested him. The defendant would not be in court if someone had not arrested him. Therefore, the detective's testimony was not prejudicial to the defendant and the motion for mistrial was properly denied.

■ Appellant also claims that the examination of Sarah Gayman[2] owner of the check cashing agency from which the subject money orders disappeared, elicited details of the burglary without relevant basis. The testimony allegedly enlarged "... the scope of the criminality..." and inflamed the jury. We agree with the trial court:

> This evidence was relevant and probative to establish that there was no authority for the negotiation of the money orders. The evidence uniformly tended to show that travelers issued the checks to Gayman and they were never lawfully placed into the stream of commercial paper. (Trial court opinion at page 5.)

The appellant contends that the in-court identifications by prosecution witnesses should have been suppressed. The basis for this argument is that the witnesses failed to identify the appellant from an allegedly suggestive photo array shown them before trial. Because the in-court identifications were permitted, appellant maintains that his attorneys were compelled to cross-examine the witnesses regarding their earlier failure to identify him. This cross-examination, appellant complains, led the jury to believe that the

---

1. Appellant mistakenly asserts that the detective was asked, "... did he have occasion to drive past [defendant's] residence two days prior to his being called as a witness[?]." The record reflects that the issue of *when* the detective was at defendant's house never actually came before the jury.

2. Appellant raises this issue by referring to the testimony of Janet Gurman. The testimony on those pages is that of Sarah Gayman. We will consider this issue in the light of the testimony of Sarah Gayman.

police had a photograph of appellant and, by implication, that appellant had a criminal record. Such a belief on the part of the jury allegedly deprived the appellant of a fair trial.

The fact that the witnesses could not identify the appellant in a photographic array does not render their in-court identifications any less admissible. The fact that they could not identify appellant earlier is relevant only to the weight and credibility of their testimony. See *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Boone*, 287 Pa.Super. 1, 429 A.2d 689 (1981). Counsel chose to cross-examine, and elicited testimony regarding the inconsistent identifications from several witnesses. The effect of the inconsistency was then to be determined by the jury.

Appellant cites *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972), for the precept that ". . . the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge." In the case at bar, the prosecution did not introduce the potentially prejudicial evidence; the defense did. Appellant's counsel weighed the possible benefits of eliciting the inconsistency against the potential for prejudice, before making his decision to cross-examine. He is bound by his decision and must accept its consequences.

Appellant's allegation that the photo array shown to the prosecution witnesses was suggestive is immaterial to the suppression issue under consideration here. In *Commonwealth v. Davis*, 264 Pa.Super. 505, 400 A.2d 199 (1979), the court said:

Subsequent to . . . a suggestive out-of-court identification, in-court identification is admissible if, considering the totality of the circumstances, it is determined that the in-court identification had an independent origin sufficiently distinguishable from the impermissible pretrial encounter. . . ., 264 Pa.Superior Ct. 509, 400 A.2d at 201.

If there is an "independent origin" for the identification of the defendant in court, then such identification is not to be suppressed.

■   The "totality of the circumstances" which determines "independent origin" consists of factors enumerated by the United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). They are:

... the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of any person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. 388 U.S. at 241, 87 S.Ct. at 1940.

The Commonwealth has the burden to establish the "independent origin" for an in-court identification which follows an (arguably) suggestive out-of-court identification. The standard of proof to be applied is one of "clear and convincing evidence" the *Wade* factors are to be used to determine whether that standard has been met.

Numerous Pennsylvania decisions apply the *Wade* criteria to determine whether there is an independent source for an in-court identification. Such an identification was permitted, even though preceded by an arguably suggestive pretrial identification, in *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978) (witness saw defendant for 5 minutes by the light of a streetlamp from a distance of 8 to 17 feet, accurately described the defendant to the police, and testified positively and consistently regarding the identification at the pretrial suppression hearing); *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976) (witness saw defendant for 5 to 10 minutes at time of incident with good light. Witness never identified another as the defendant, nor failed to identify the defendant. Photo array shown to witness one month after incident.); *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976) (Witness had focused her attention on the defendant, observing him for several min-

utes in a well-lit area.); *Commonwealth v. Burton*, 452 Pa. 521, 307 A.2d 277 (1973) (Rape victim's testimony: "That's the man that was in my room," held to indicate independent origin for the identification.)

In the case at bar, the six witnesses who identified the appellant at trial testified that during the incident they had been able to observe him for approximately 15 to 30 minutes, at distances ranging from two feet to eight feet. All testified to very good lighting at the scene of the incident. It is clear that the witnesses' prior opportunities to observe the alleged criminal acts were more than adequate to establish independent basis for their in-court identifications of the appellant. Therefore, regardless of whether the photo array shown to the prosecution witnesses was suggestive, the trial court properly refused to suppress their identifications of the appellant made at trial.

The third issue raised by appellant regards forgery: whether, under the Crimes Code, it can be committed by the signing of a fictitious name, and, if so, whether the Commonwealth sustained its burden of proof that the name "Richard Swan" was indeed fictitious. [We respond to both issues in the affirmative.]

The offense of forgery is defined in Title 18 Pa.C.S. § 4101:

> (A) Offense defined.—A person is guilty of forgery if, with intent to defraud or injury anyone ... the actor:
>
> .    .    .    .    .
>
> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another *who did not authorize* that act .... (Emphasis added.)

Appellant argues that a literal reading of subsection (2) establishes a requirement that the name allegedly forged be proven to be that of an actual person because only an actual person could possibly have authorized his name to be signed by another. By reverse implication, appellant maintains, "... the person must be capable of giving his authority and

therefore not fictitious." (Brief for appellant, at page 10.) The Commonwealth's response is that a fictitious person cannot, by definition, authorize another to sign his name. The appellant's position is further refuted by the reasoning in *Commonwealth v. Globe Indemnity Co.*, 323 Pa. 261, 185 A. 796 (1936):

> ... a name is fictitious when it is feigned or pretended, and a nonexistent person is one who does not exist in the sense that he was not intended to be the payee by the drawer. 323 Pa. at 266, 185 A. 796.

The money orders passed at the stores in Lansdale on May 12, 1979 were among those stolen from the Gayman Check Cashing Agency on November 30, 1977. Payment had been stopped on the money orders because they were stolen. Therefore, there was intended to be *no* payee on any of the money orders. This fact alone rebuts the appellant's contention that, even if a forgery can be committed by use of a fictitious name, the Commonwealth failed to sustain its burden to prove that "Richard Swan" was fictitious under *Globe Indemnity*, supra, regardless of whether "Richard Swan" is an actual person, he did not exist "... in the sense that he was not intended to be the payee, ..." (323 Pa. at 266, 185 A. 796) because *no one* was intended to be the payee.

The rule on forgery by fictitious name was developed in cases decided under the now-repealed Penal Code. Title 18 P.S. § 5014. In *Commonwealth v. DiPiero*, 205 Pa.Super. 312, 208 A.2d 912 (1965), the court said:

> ... when the false making of an instrument is performed with the intent to defraud, even though it be by way of the use of a fictitious name, the uttering of the false instrument becomes illegal and that is forgery.

205 Pa.Superior Ct. 316, 208 A.2d at 914.

While the definition of the offense of forgery was changed, we do not find an intent on the part of the legislature to change the established rule providing that the forgery statute may be violated by signing a fictitious name. Had the legislature intended to overrule long-standing

precedent, that intention would have been clearly and unmistakably expressed.

As to appellant's contention that the Commonwealth failed to sustain its burden of proof as to whether "Richard Swan" was fictitious, we disagree. First, as mentioned above, no one was to be payee on the subject money orders, because they were known to be stolen and payment had been stopped on them.

Furthermore, on review to this court, following conviction in the trial court, the evidence must be read in the light most favorable to the Commonwealth. To this end, all facts which the Commonwealth's evidence *tends* to prove are admitted, and the Commonwealth may sustain by circumstantial evidence. And, as the appellant himself points out, in other states with similar statutes, ". . . a minimum quantum of proof was required to support the theory that the payee was a fictitious person." (Brief for appellant at p. 11). Certainly, the Commonwealth has garnered the required "minimum quantum of proof." Besides the fact that the money orders were known to be stolen, the Commonwealth has the testimony of six witnesses. They all identified Alphonzo Zabala to be the man who was in their stores, purchasing goods with Travelers Express Company money orders, and signing them "Richard Swan." The Commonwealth has sustained its burden of proof on this issue.

Appellant finally argues that the trial judge's instruction to the jury on the charge of theft by deception was erroneous. That charge was brought under Title 18 Pa.C.S.A. § 3922:

(A) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, *including* false impressions as to law, *value*, intention, or other state of mind; . . .

(3) fails to correct a false impression which the deceiver previously created or reinforced . . . . (Emphasis added.)

The judge's instruction recited the elements of the crime of theft by deception, concluding "... [you must find] ... that the defendant obtained and/or withheld those items of property by intentionally creating a false impression *as to his identity.*" (R. 421A) (emphasis added).

■ Appellant contends that the false impression was a deception as to *name,* rather than to defendant's *identity,* and that therefore the instruction was erroneous. The record reflects a brief colloquy on the subject which ensued at sidebar, just following the judge's charge to the jury. Counsel for defendant reiterated part of the instruction on theft by deception:

> ... you indicated that the defendant can be guilty of theft by deception if he creates a false impression as to his *identity.* I think that the court has an obligation to go further and to say that the institution here must suffer some pecuniary loss. In other words, there must be the theft. That's all. (R. 429A) (Emphasis added.)

At the time, defense counsel took no exception to the judge's use of "false impression as to his *identity.*" (Emphasis added.) In fact, by repeating the judge's very words counsel for the appellant appeared to acquiesce in their use, as adequate for the instruction on theft by deception. Furthermore, the list of "false impressions" in the definition of the offense was clearly not intended to be exclusive; the phrase "... *including* false impressions as to law, ..." in no way limits the types of false impressions which might be created pursuant to a deception. Thus, a false impression as to identity can be a deception as well as a false impression as to value.

■ Counsel for appellant also requested that the element of "pecuniary loss" be included in the instruction on theft by deception. (R. 429A) If included, "pecuniary loss" would be an addition to the elements of the offense as defined in Title 18 Pa.C.S.A. § 3922. "Pecuniary loss" is the corollary to "... intentionally obtain[ing] or withhold[ing] property of another ...." Thus, instruction on either would have the same effect. Because the judge did instruct

the jury on "... obtain[ing] or withhold[ing] property, ..." the offense of theft by deception was properly charged.

Judgment of sentence affirmed.