J-A05034-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEE BOOZER | : | |
| | : | |
| Appellant | : | No. 990 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 1, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006519-2017

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED MARCH 06, 2020

Lee Boozer (Boozer) appeals the judgment of sentence entered by the Court of Common Pleas of Allegheny County (trial court) following a jury trial on charges stemming from a fatal convenience store shooting.  Boozer was convicted of second-degree murder, criminal attempt to commit criminal homicide, attempted homicide, robbery, and aggravated assault.  He was sentenced on the second-degree murder count to a mandatory prison term of life without the possibility of parole.  He received a consecutive term of nine to 18 years on the aggravated assault count, with no further penalty as to the remaining convictions.  On appeal, Boozer contends that he is entitled to a

_____

[*] Retired Senior Judge assigned to the Superior Court.

new trial due to the trial court's denial of the right to self-representation, as well as the admission of disputed identification evidence. We affirm.

I.

Darryl Terry (Terry) was the owner of the Allendale Market located at 3333 Allendale Street in the East Sheridan section of the City of Pittsburgh. In May 2014, a man entered Terry's store, shot him once in the chest and ransacked the establishment. Terry tried to flee, but he was shot four more times in the back as he ran across the street, and after he fell to the ground, Terry was shot twice in the head. His accumulated injuries were fatal.

Susan Wagner (Wagner) happened to observe this shooting from her car while driving on Allendale Street toward her mother's nearby home. Wagner saw the shooter running away, and she tried to position her car in a place where she could safely call the police. As she did so, Wagner saw the shooter enter a home located at 1107 Stanhope Street. Wagner turned onto Stanhope Street, where the shooter came outside and accosted her, discharging a firearm and grazing Wagner's arm. The shooter pursued Wagner on foot as she turned onto Chartiers Avenue and then shot her once in the chest. Wagner survived the attack. Police later recovered various items from the yard of the home at 1107 Stanhope Street, including a pair of

sunglasses bearing DNA from which Boozer could not be excluded as a contributor.[1]

The afternoon of the shooting, a man came to the home of Sarom Long (Long) on 1308 Pritchard Street, less than a mile away from the shooting. The man was pacing back and forth in front of the residence. Long did not recognize the man, but her boyfriend's brother, Matthew Sherrell, asked Long to give the man a ride to the bus station and Long obliged. During the drive, the man asked to be dropped off at his home, and as he got out, Long saw blood on his hands, legs and shoes.

During the police investigation of the shooting, Long selected a picture of a suspect named "Emmett Reese" in a photo-array police showed her. See Trial Transcript, at 508. Long testified that at the time, she was unsure that the photo of Reese matched the appearance of the person she had driven on the day of the shooting. Id. at 510.[2]

Subsequently, Long texted Detective McGee a photo of Boozer, identifying him as the man she had driven. The police soon compiled another photo-array, and Long selected Boozer's picture. Id. at 512. Sometime after

_____

[1] In addition to Boozer, there were three other contributors of DNA found on the sunglasses.

[2] At trial, Long testified that she had never met Emmett Reese, and that Emmett Reese was not the person she encountered at her home who had requested a ride. See Trial Transcript, at 510.

that, while the investigation was still underway, Boozer came back to Long's home and assaulted her. Id. at 528-29.

Police also interviewed Wagner, but initially she remembered little of the incident and could not positively identify the man who shot her. In a six-person photo line-up, Wagner could only say that one photo resembled her attacker, again, a man named Emmett Reese. Id. at 558-61, 575. About a year later, police presented Wagner with a photo of Boozer and she said that he also resembled the man who killed Terry and attempted to murder her. Id. at 561-63.

Boozer was not arrested in relation to this incident until June 2017, which was shortly after his DNA was linked to the sunglasses found at 1107 Stanhope Street.[3] In his recorded interview with police, Boozer admitted to going to Terry's store on at least one occasion. It also came out that Boozer and Terry had both been romantically involved with the same woman, Lasawn Sherrell (Sherrell), the sister of Matthew Sherrell. Boozer admitted that at some point before the shooting, he had seen nude pictures of Terry on Sherrell's phone. Police interpreted that fact as a potential motive for Boozer to attack Terry.

---

[3] Police had also collected photographs of Boozer wearing a dark jacket and a fisherman's hat, taken at around the same time of the shooting. Wagner had described the shooter as wearing a dark jacket and a fisherman's cap.

Based on the evidence collected during the police investigation, Boozer was charged with criminal homicide, robbery, criminal attempt to commit criminal homicide, aggravated assault, possession of a firearm without a license, and a person not to possess a firearm.[4] Boozer was appointed defense counsel and the case proceeded to trial.

Once the 27th of 32 total trial witnesses had finished testifying, a recess for lunch was granted, and upon returning, Boozer's counsel informed the trial court that Boozer had asked to represent himself. See Trial Transcript, at 695. The matter was addressed the next morning, at which point defense counsel asked to be discharged because Boozer had threatened him with an allusion to defense counsel's son. Id. at 764-65.[5] Boozer denied making the threat and insisted that his counsel had failed to gather and present exculpatory evidence. Id. at 765.

The trial court had Boozer sworn so that a colloquy could be held to determine if he could proceed pro se. Id. at 766-71. The trial court

_____

[4] The charge of person not to possess a firearm was severed and tried in a non-jury trial held in conjunction with the jury trial on the other charges. That offense is not at issue in this appeal.

[5] Defense counsel also requested a mistrial due to the threat, but after the trial court denied Boozer's request to proceed pro se, the motion was not addressed, and defense counsel thanked the trial court for allowing him to remain on the case. See Trial Transcript, at 770. That apparently abandoned motion for a mistrial is not at issue in this appeal, so it merits no further discussion here.

questioned Boozer regarding the privileges and pitfalls of self-representation, including the elements of the charged crimes, maximum penalties, and the standards he would be held to as his own advocate.

Boozer insisted that the trial should not proceed unless he was first provided documents he claimed counsel had withheld from him. Id. at 769. Counsel responded that the documents in question were made confidential by court order and could not be disclosed to Boozer. Id. Boozer then asked counsel to show him transcripts and documents concerning his alibi, such as flight information, bank receipts and subpoenas of alibi witnesses such as Matthew Sherrell. Id.

Counsel said he had the documents referred to by Boozer, but indicated that they were a "grand jury matter." Id. at 770. Boozer protested that he could not be ready to proceed pro se until given additional time to review those materials: "I can't represent myself without the information." Id. at 770. The trial court denied Boozer's request and allowed defense counsel to remain on the case, explaining that it did not appear that Boozer understood enough of the legal issues, procedure and evidence to take on his own defense. Id.[6] Boozer again commented that he had not "even seen the evidence involved," and the trial court replied that he was "not capable of effectively representing [himself]". Id.

_____

[6] It appears that defense counsel withdrew his earlier motion to withdraw.

In its opinion, the trial court reasoned further that Boozer was attempting to derail the proceedings rather than legitimately seeking to exercise the right of self-representation:

> Boozer's conduct during the course of this particular trial indicated that his ultimate goal was to disrupt the process and this would be achieved by him representing himself. It was clear that his request to represent himself was not the exercise of a constitutionally protected right but, rather, his desire to cause a mistrial which would result [in] the retrial of these charges since it appeared that he believed that the Commonwealth had [proven] the charge[s] of criminal homicide and criminal attempt criminal homicide. While [the trial court] noted that it did not think that Boozer had the ability to handle this case, it was the real motivation of the request to represent himself that was considered in light of Boozer's attitude during the course of this case when he threatened his own counsel and continued to demand the introduction of irrelevant materials in an attempt to form the basis for a mistrial. It was abundantly clear to [the trial court] that there was no desire by Boozer to exercise his constitutionally protected right to represent himself but, rather, to provide himself with an opportunity to ensure that a mistrial occurred. Since [the trial court] viewed that Boozer's request was not legitimate, it denied him the right to proceed pro se.

Trial Court Opinion, 7/9/2019, at 8-9.

At the conclusion of trial, Boozer was found guilty of the offenses outlined above. The jury found him not guilty of possession of firearm without a license. Boozer's trial counsel filed a motion to withdraw after the sentencing, and appellate counsel entered an appearance, filing an application to reinstate Boozer's appellate rights, which the trial court granted. Both Boozer and the trial court complied with Pa.R.A.P. 1925.

In his appellate brief, Boozer asserts four issues for our consideration:

1.      Did the Trial Court commit reversible error when it refused to allow Mr. Boozer the right to represent himself when it was clear in the record that . . . Boozer knowingly, intelligently and voluntary waived his right to counsel[?]

2.      Did the Trial Court commit reversible error when it permitted an in court line-up to be shown to Susan Wagner [a shooting victim] which was extremely suggestive and prejudicial[?]

3.      Did the Trial Court commit reversible error when it permitted Detective McGee, prior to Sarom Long's testimony, to instruct Long to point Boozer out and say it was him that [Long] drove away from the scene [of the crime?]

4.      Was it reversible error to allow into evidence a prior statement of Mathew Sherrell who testified he did not remember the prior statement and did not want to participate in this trial violating Pennsylvania Rule of Evidence 804[?]

Appellant's Brief, at 4 (renumbered).  Each of those issues will be addressed in turn below.

II.

A.

The trial court did not abuse its discretion in precluding Boozer from representing himself because the request was indisputably untimely, and there was evidence that the request was equivocal and made for purposes of delay.

It is well-established that a defendant has a constitutional right to represent himself in court.  See Faretta v. California, 422 U.S. 806, 821 (1975) (recognizing that under the Sixth Amendment, the criminally accused has a right to mount his own defense).  A defendant's right to self-

representation must be honored when invoked if a trial court is able to ascertain that the defendant is knowingly, voluntarily and intelligently waiving the constitutional right to the assistance of counsel. Id. at 835; see also Commonwealth v. Starr, 664 A.2d 1326, 1334–35 (Pa. 1995) (outlining waiver of counsel procedure set forth in Pa.R.Crim.P. 121). This probing colloquy requires the court to engage a "searching and formal inquiry" as to "(1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not." Starr, 664 A.2d at 1335.

Significantly, however, a defendant's request to proceed pro se "must be made timely and not for purposes of delay and must be clear and unequivocal." Commonwealth v. Davido, 868 A.2d 431, 438 (Pa. 2005). If a defendant waits until the trial is already underway, then the request is untimely and must be "addressed to the sound discretion of the trial court." Id. (quoting Commonwealth v. Owens, 436 A.2d 129, 133 n.6 (Pa. 1981)); see also Commonwealth v. El, 977 A.2d 1158, 1163-65 (Pa. 2009).

The right to self-representation may also be waived or forfeited by deliberately engaging "in serious and obstructionist misconduct." Commonwealth v. Tighe, No. 57 MAP 2018, at 12 (Pa. February 19, 2020) (quoting Faretta, 422 U.S., at 834 n.46). In the event of an untimely invocation of the right, the protections of Faretta and the formal inquiry discussed in Starr do not apply. See El, 977 A.2d at 1164 ("Most significant

is the fact that with both the right to a jury trial and the right to self-representation, there exists the potential danger of a defendant using the right to manipulate or delay proceedings.").

In this case, the trial court denied Boozer's request to represent himself, finding that he was unprepared to proceed, and that his invocation of the right to self-representation was merely an attempt to disrupt the proceedings and set up a mistrial. See Trial Court Opinion, 7/9/2019, at 8-9. The trial court did so after Boozer's defense counsel conveyed that he believed Boozer had threatened him. Moreover, Boozer's professed reasons for seeking self-representation – his counsel's alleged refusal to grant him access to various documents – could have been resolved before the trial started and certainly before dozens of witness had already testified.

Significantly, Boozer conditioned his readiness to proceed on having the chance to review pieces of evidence he knew about prior to the day of trial but which were confidential grand jury materials. Boozer informed the trial court that he could not "represent [him]self without the information." Trial Transcript, at 770.

Had the trial court acquiesced to Boozer's request to go forward on his own, it could have easily caused a significant delay and possibly a mistrial had Boozer refused to continue unless given access to the confidential items. Further, Boozer never established his right to the particular evidence he

sought, so his conditional readiness to proceed might have never been realized, making the request equivocal at best.

On these facts, Boozer's request was untimely, and conditioned on his receipt of evidence, it appears he was not entitled to. There is ample evidence that Boozer had an ulterior motive in seeking to represent himself. As stated above, a defendant must timely invoke the right to self-representation, and if he does not, a trial court may deny the request if there is evidence it was made for purposes of delay or obstruction. The trial court had reason to suspect that Boozer's 11th hour request, coupled with a threat against his attorney, was intended to disrupt or avoid the resolution of the proceedings. Accordingly, the trial court did not abuse its discretion in denying Boozer control over his defense. See e.g., EI, 977 A.2d at 1165 (explaining that "the very basis for requiring a timely and unequivocal assertion of the right to proceed pro se is to avoid manipulation and delay."); Commonwealth v. Dowling, 959 A.2d 910, 915 (Pa. 2008) (same); Commonwealth v. Treiber, 874 A.2d 26, 32 (Pa. 2005) (same).

B.

As to whether the trial court erred in allowing Susan Wagner to identify Boozer from the stand as the person who shot her, the admission of that in-court identification is subject to the trial court's discretion. See Pa.R.E. 611(a) ("The court should exercise control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures

effective for determining the truth[.]"  "Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law."  Maisano v. Avery, 204 A.3d 515, 523 (Pa. Super. 2019).  "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."  Id.

A special standard applies to the admissibility of in-court identifications which have been tainted, pre-trial, by unduly suggestive procedures.  The United States Supreme Court held in Neil v. Biggers, 409 U.S. 188, 199-200 (1972), that if such a taint arises, the admissibility of a subsequent in-court identification turns on several factors, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  See also Commonwealth v. Carter, 643 A.2d 61, 71 (Pa. 1994) (same).  "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable."  Commonwealth v. Brown, 23 A.3d 544, 558 (Pa. Super. 2011).

In this case, Wagner admitted to having trouble remembering the shooting and the face of the perpetrator when she was initially interviewed by police. See Trial Transcript, at 557-59, 574-76. Wagner testified on direct examination that at that time she was shown the first array of six photos, she did not remember identifying anyone.

Sometime later, Wagner was shown a photo of Boozer, who she also believed "resembled" the shooter. Then, at trial, the Commonwealth had Wagner evaluate from the stand each photo she had previously been shown. Wagner confirmed that the first six photos did not depict her assailant. She was then shown the seventh photo (of Boozer), which she had said resembled the shooter, and she testified that she was "certain" of his identity as the man who attacked her. Id. at 563.

The defense objected that it was unduly suggestive for the prosecution to stage a line-up in front of the jury. The Commonwealth countered that having Wagner identify Boozer, to the exclusion of the other individuals in the photo array, was necessary to rebut Boozer's defense that someone else committed the subject crimes.

Although the trial court overruled the objection, defense counsel was allowed to cross-examine Wagner on the out-of-court and in-court identifications. She admitted that she had told police at one point that Emmett Reese resembled the shooter. However, Wagner testified that there was only

a "slim" possibility of her identifying Reese as the shooter if he were also present in the courtroom. Id. at 592-94.

Boozer now argues pursuant to Biggers that the trial court erred in allowing Wagner to identify him in court because it resulted from suggestive and prejudicial procedures employed before and during the trial. See Appellant's Brief, at 19-26. He contends that Wagner's earlier uncertainty of the shooter's identity and Boozer's presence in the courtroom made Wagner's identification improper because it was so strongly suggested by the prosecutor who she should identify.

Contrary to Boozer's claims, this case is not governed by Biggers, and the procedures used to elicit the in-court identification were also not so unduly suggestive as to render it inadmissible. Wagner viewed photo arrays prior to trial and told police that Boozer and one other individual resembled the person who shot her. There appears to be nothing suggestive or unduly prejudicial about those out-of-court identifications, and Boozer does not contend that there was. Accordingly, the Biggers analysis does not apply because it is not asserted here that an improper pre-trial identification tainted the identification Wagner made at trial. See Commonwealth v. Johnson, 542 Pa. 384, 668 A.2d 97, 103 (1995) ("Because the out-of-court identifications were not tainted, we need not address [the] appellant's argument that the in-court identifications lacked an independent basis [for its admissibility].").

Boozer's central contention, rather, is that having Wagner view photos from an array while Boozer was present in court prompted her to identify Boozer as the culprit. Clearly, Boozer's presence alone did not render the in-court identification inadmissible or preclude Wagner from attempting to identify him. By that logic, all in-court identifications would be inadmissible. See Commonwealth v. Santiago, 209 A.3d 912 (Pa. 2019) (the presence of the defendant at trial is "never suppressible").

The admission of the in-court identification was, therefore, subject to the trial court's discretion. Since the outcome of the trial in this case hinged on proof of the shooter's identity, Wagner's in-court identification was highly relevant, despite her admitted memory lapses in the past. To the extent that Wagner's testimony or the procedures used to elicit the in-court identification were irregular, it was a matter of weight for the jury. See e.g., Commonwealth v. Kyle, 533 A.2d 120, 132 (Pa. Super. 1987) (the discrepancies between an initial description and the person identified in a photo array concern "credibility," not "undue suggestiveness"); Commonwealth v. Zabala, 449 A.2d 583, 587 (Pa. Super. 1982) (the fact that a witness "could not previously identify [an] appellant does not render [his or her] in-court identification any less admissible. The fact that [the witness] could not identify [the defendant] earlier is relevant only to the weight and credibility of [his or her] testimony."). In view of the totality of

the circumstances, the trial court did not abuse its discretion in ruling that Wagner's in-court identification was admissible.

C.

Boozer next argues that Sarom Long should have been excluded as a witness at trial on the ground that Detective McGee advised her just before testifying to identify Boozer. Prior to the subject shooting, Long knew Detective McGee personally through mutual acquaintances and prior cases. During Long's testimony, she recounted driving Boozer out of town right after the shooting occurred, and she was certain she knew who he was. From our review of the record, the trial court did not err in permitting Long to testify to that effect, notwithstanding her inadvisable conversation with Detective McGee.[7]

The facts relevant to this issue are as follows. During a recess from trial, defense counsel overheard Detective McGee speaking with Long in a hallway within the courthouse. Defense counsel immediately reported to the trial court that the officer was overheard instructing Long to identify Boozer in court as the perpetrator. Defense counsel moved for a mistrial, and the trial court then took testimony outside the presence of the jury in order to question Long and Detective McGee about their exchange. See Trial Transcript, at 237-44, 245-56.

---

[7] The standards of admissibility discussed above in Part II.B. are applicable to this issue.

Detective McGee explained to the trial court that he had been acquainted with Long from previous cases. Long sat next to Detective McGee on a bench in the courthouse hallway and told him that she was afraid of seeing Boozer in the courtroom because of his violent nature. Detective McGee said he knew how nervous Long could get before testifying, so he tried to give her encouragement:

> What happened was we were talking. She said "Is he going to be in there when I testify." I said yes. She said, "I don't want to see him. I'm afraid of him. I don't want to be in the same room with him." I said that he has a constitutional right to be in the same room with you while you're testifying against him. And if he's not in the room, it violates his constitutional rights. At which time, she said, "Well, he violated my constitutional rights when he came to my house and beat me up." I said, "Well, at this point it's your turn to do what you have to do. When you see him in the courtroom and tell your story, point to him and say this is the person that did it."

Id. at 242.

Long testified that Detective McGee had not influenced her testimony in any way. She also corroborated Detective McGee's account about what he had told her. Id. at 246-47. On cross-examination before the jury, Long testified that she had falsely told police she had given a ride to Emmett Reese, but that she was sure it was Boozer who she drove away from the crime scene. Defense counsel also had ample opportunity to impeach Long's testimony based on her earlier representations and the improper exchange with Detective McGee. Thus, under the circumstances, the testimony was not the

product of unduly suggestive procedures, and the trial court did not abuse its discretion in permitting Long to identify Boozer.

D.

Finally, the trial court did not err in admitting into evidence prior recorded statements that Matthew Sherrell had made to police regarding Boozer's activities on the day that Terrell and Wagner were shot. Boozer objected to those recorded statements on hearsay grounds, and the trial court overruled the objection, finding that the witness claimed to have no recollection of what he had said, satisfying an exception to the hearsay rule. See Trial Transcript, at 883-84.

The statements were admissible under Pa.R.E. 803.1(4)(C), which permitted the Commonwealth to introduce prior statements "by a declarant-witness who testifies to an inability to remember the subject matter of the statement," as long as the statement "is a verbatim contemporaneous electric recording of an oral statement."

Sherrell was called to testify at Boozer's trial involuntarily, and he repeatedly invoked the right to remain silent, saying he did not want to be involved in the case. When the trial court attempted to compel him to testify about what he told police in a recorded interview, Sherrell claimed that he could not answer any such questions because he could not remember the conversation. See Trial Transcript, at 871-75, 881.

These circumstances satisfy the requirements for admission outlined in Pa.R.E. 803.1(4)(C) because Sherrell adamantly denied having the ability to remember the subject matter of a statement which was electronically recorded contemporaneously with its utterance. Thus, none of Boozer's appellate claims has merit, and the subject order on review must stand.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/6/2020</u>